UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
THE TRUSTEES OF THE SOFT DRINK AND        ECF
BREWERY WORKERS UNION, LOCAL 812
RETIREMENT FUND,

                              Plaintiffs,                  **COMPLAINT**

         - against -                                  2:20-CV-  ()()

ROSE BEVERAGE DISTRIBUTORS, INC., VINCENT
MONTANO and RED BEVERAGE CORP.,

                             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiffs, the Trustees of the Soft Drink and Brewery Workers Union, Local 812 Retirement Fund (the "Trustees"), by their attorneys, Cary Kane LLP, respectfully allege as follows:

## NATURE OF THE ACTION

1. This action is brought by the Trustees in their capacities as fiduciaries of the Local 812 Retirement Fund (the "Fund") against Rose Beverage Distributors, Inc. ("Rose") a former participating employer which owes the Fund withdrawal liability payments pursuant to Sections 4201 through 4225 and 4301 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1381 through 1405 and 1451.

2. This action is brought by the Trustees in their capacities as fiduciaries of the Fund against Vincent Montano who, at all times relevant hereto, was the alter ego of Rose and, as such, is jointly and severally liable for the withdrawal liability due and owing the Fund.

3. This action is brought by the Trustees in their capacities as fiduciaries of the Fund against Red Beverage Corp. ("Red"), which is, upon information and belief, is the successor in

interest to Rose and, thus, jointly and severally liable for the withdrawal liability due and owing the Fund.

## JURISDICTION

4. The jurisdiction of this court is invoked pursuant to Sections 502(a) and (e) and Sections 4301(a) and (c) of ERISA, 29 U.S.C. §§ 1132(a) and (e), 1451(a) and (c).

## VENUE

5. As the Fund is administered at 455 Northern Boulevard, Great Neck, New York, which is within the Eastern District of New York, this action is properly brought in this district pursuant to Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d).

## THE PARTIES

6. The Fund is an "employee pension benefit plan," an "employee benefit plan" and a "multiemployer plan" as those terms are defined by Sections 3(2), 3(3) and 3(37), respectively, of ERISA, 29 U.S.C. §§ 1002(2), 1002(3) and 1002(37).

7. The Fund was established pursuant to an Agreement and Declaration of Trust (the "Trust Agreement"). The Trust Agreement provides, *inter alia*, that interest shall be charged on any amount of defaulted withdrawal liability from the date the payment was due to the date it is paid at an annual rate equal to the prime rate charged by the Chase Manhattan Bank, NA on the first day of the calendar quarter preceding the due date of the payment, with interest charged for each succeeding twelve (12) month period that any amount in default remains at the prime rate in effect on the anniversary date of the date as of which the initial interest rate was determined. The Trust Agreement provides further than, in the event litigation is commenced to collect unpaid withdrawal liability, the defaulted employer shall also be liable for liquidated damages in an amount equal to the greater of (i) the amount of interest charged on the unpaid balance, or (ii) the

2

maximum legal rate of interest permitted by law on the unpaid amount awarded, as well as attorney's fees and all costs, incurred in the action, as awarded by the Court.

8. Plaintiff Trustees have been, at all times material hereto, the "plan sponsors" of the Fund, as that term is defined by Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B). The Trustees are "fiduciaries" of the Fund, as that term is defined by Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

9. Rose was, at all times material hereto, an "employer," as that term is defined by Section 3(5) of ERISA, 29 U.S.C. §1002(5), with offices located, upon information and belief, at 777 Berriman Street, Brooklyn, New York and was dissolved by Proclamation/Annulment of Authority by the New York State Department of State, Division of Corporations on July 29, 2009 (the "Dissolution").

10. Montano was, prior to the Dissolution, Rose's President, Chief Executive Officer and alter ego. Following the Dissolution, Montano was Rose's sole proprietor and, as such, was an "employer," as that term is defined by Section 3(5) of ERISA, 29 U.S.C. §1002(5). Montano resides, upon information and belief, at 157-53 79th Street, Howard Beach, NY.

11. Upon information and belief, Red, which maintains its offices at 777 Berriman Street, Brooklyn, New York, is the successor in interest to Rose as a result of its purchase of Rose's business operations and its partial payment of Rose's withdrawal liability.

**RELEVANT FACTS**

12. Notwithstanding the Dissolution, Montano, acting as a sole proprietor in the absence of corporate status, continued using Rose's corporate name for its business operations. As result, the Fund was unaware that Rose was no longer a corporation.

13. Upon information and belief, on or about June 29, 2015, Montano sold Rose's business operations to Red (the "Sale").

14. As a result of the Sale, Rose permanently ceased to have an obligation to make contributions to the Fund, causing a complete withdrawal from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). As a result, Rose incurred withdrawal liability within the meaning of Section 4201 of ERISA, 29 U.S.C. § 1381, *et seq*.

15. The Trustees requested that the Fund's actuary determine, pursuant to Section 4213 of ERISA, 29 U.S.C. § 1393, the withdrawal liability owed by Rose to the Fund. The Fund's actuary determined Rose's withdrawal liability to be $147,880.00.

16. Pursuant to Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), and, by letter dated July 27, 2015, which was sent via UPS, the Fund notified Montano, on behalf of Rose, that withdrawal liability was due to the Fund in the amount of $147,880.00 and demanded payment of withdrawal liability in quarterly payments of $3,683.75 each, with the first payment due no later than sixty days after the date of the letter (*i.e.*, September 25, 2015) (the "Beginning Date") and subsequent payments due every three months beginning on October 1, 2015, until a total of sixty-six (66) payments had been made, at which time a final quarterly payment of $2,421.00 was due.

17. Notwithstanding the foregoing, Rose failed to remit the first quarterly payment due by the Beginning Date.

18. By letter dated October 20, 2015, which was sent via UPS, Montano, on behalf of Rose, was advised by the Fund that Rose had failed to either pay its obligation in full or begin remitting quarterly installments on the Beginning Date. Montano was further advised that if the

company failed to cure its default within sixty (60) days of the letter, Rose would become liable for the entire amount of the unpaid withdrawal liability.

19. By letter dated January 12, 2016, Montano, signing as President of Rose notwithstanding the Dissolution, authorized the Fund to accept payments from Red for Rose's quarterly withdrawal liability payments. In the letter, Montano acknowledged that the Fund's acceptance of any payments from Red did not waive any of the Fund's rights against Rose.

20. By letters dated July 27, 2015, October 20, 2015, February 28, 2016, December 7, 2017 and February 2, 2018, Montano, on behalf of Rose, was advised by the Fund that Rose had failed to remit its quarterly installments of withdrawal liability and was further advised that if the company failed to cure its default within sixty (60) days of the letter, Rose would become liable for the entire amount of the unpaid withdrawal liability.

21. In response to the foregoing letters Red made payments in the amount of $3,683.75 each on or about February 8, 2016 and on or about April 1, 2016, Montano personally made payments by bank check of $3703.75 and $3,683.75 on July 6, 2016 and Montano made payments from his personal checking account of $3,683.75 each on or about November 1, 2016, February 1, 2017 and May 18, 2017 and of $7,367.50 on or about February 16, 2018.

22. By letter dated August 15, 2018, which was sent by Certified Mail, Return Receipt Requested, Rose was advised by the Fund that it had failed to submit its 10th, 11th and 12th quarterly installment payments that were due on January 1, April 1 and July 1, 2018 respectfully and that the amount in default was $11,051.25. Rose was advised once again that if the company failed to cure its default within sixty (60) days of the letter, Rose would become liable for the entire amount of the unpaid withdrawal liability.

23. In response, Montano made a payment from his personal checking account of $7,367.50 on or about October 10, 2018.

24. The foregoing payment was the last one received by the Fund towards Rose's withdrawal liability obligation.

25. Rose failed to request review of any specific matter related to the determination of withdrawal liability or identify any inaccuracy in the determination of unfunded vested benefits in accordance with Section 4219(b)(2) of ERISA, 29 U.S.C. §1399(b)(2).

26. Rose failed to initiate arbitration of the withdrawal liability assessment as permitted by Section 4221(a) of ERISA, 29 U.S.C. §1401(a).

27. Rose has failed to cure its default by remitting payment of its outstanding withdrawal liability.

28. Section 17.4(d)(II) of the of the Soft Drink and Brewery Workers Union Local 812 Retirement Fund Agreement and Declaration of Trust (the "Trust Agreement") provides that, in the event of a default in payment of withdrawal liability, interest shall be charged on any amount in default from the date the payment was due to the date it is paid at the rate set by the Trustees from time to time for purposes of delinquent contributions.

29. Section V of the Fund's Statement of Policy for Collection of Employer Contributions (the "Policy") provides that interest shall accrue on contributions that are outstanding for more than 180 days from the date due through the date of payment at the rate of eighteen (18%) percent per annum.

30. Section 17.4(e) of the Trust Agreement provides that in any action by the Trustees to collect withdrawal liability, if judgment is awarded in favor of the Fund, the delinquent

employer shall also be liable for liquidated damages and attorneys' fees and costs incurred by the Fund in the action.

31. As a result of its failure to cure its default, and, in accordance with the terms of the Trust Agreement and the Policy, Rose is now liable to the Fund for the remaining amount of its withdrawal liability, together with interest accrued thereon, in the amount of $51,659.68.

32. As a result of its failure to cure its default, Rose is now liable to the Fund for the remaining amount of its withdrawal liability, to wit, $130,431.02, together with interest accrued thereon through June 1, 2020 in the amount of $44,998.70, or a total of $175,429.72.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST ROSE FOR FAILURE TO REMIT PAYMENT OF WITHDRAWAL LIABILITY

33. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 32 as if set forth fully herein.

34. Pursuant to Section 4219(c)(5) of ERISA, 29 U.S.C. §1399(c)(5), as a result of its default, Rose is now obligated to pay the Fund the remaining amount of its withdrawal liability, to wit, $130,431.02, together with interest accrued thereon through June 1, 2020 in the amount of $44,998.70, or a total of $175,429.72.

35. Pursuant to Sections 502(g)(2), 515 and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2), 1145 and 1451(b), Rose is also liable to the Fund for interest which continues to accrue from June 1, 2020 through the date of payment on the delinquent liability, liquidated damages, the costs of collection and attorneys' fees.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST MONTANO FOR FAILURE TO REMIT PAYMENT OF WITHDRAWAL LIABILITY

36. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 35 as if set forth fully herein.

7

37. Prior to the Dissolution, as Rose's President and Chief Executive Officer, Montano exercised complete domination and control over Rose's operations and was its alter ego.

38. Following the Dissolution, Rose became a sole proprietorship owned and operated by Montano.

39. As Rose's alter ego prior to the Dissolution, as its owner and sole proprietor after the Dissolution, and, pursuant to Section 4219(c)(5) of ERISA, 29 U.S.C. §1399(c)(5), as a result of Rose's default, Montano is personally jointly and severally liable for, and is obligated to pay the Fund, the remaining amount of Rose's withdrawal liability, to wit, $130,431.02, together with interest accrued thereon through June 1, 2020 in the amount of $44,998.70, or a total of $175,429.72.

40. Pursuant to Sections 502(g)(2), 515 and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2), 1145 and 1451(b), Montano is also liable to the Fund for interest which continues to accrue from June 1, 2020 through the date of payment on the delinquent liability, liquidated damages, the costs of collection and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST RED FOR FAILURE TO REMIT PAYMENT OF WITHDRAWAL LIABILITY

41. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 40 as if set forth fully herein.

42. Upon information and belief, as a result of its purchase of Rose's business operations and as its assumption of Rose's liability to Fund, as evidenced by its payment of two of Rose's quarterly withdrawal liability payments, Red became the successor in interest to Rose.

43. As the successor in interest to Rose, and, pursuant to Section 4219(c)(5) of ERISA, 29 U.S.C. §1399(c)(5), as a result of Rose's default, Red is jointly and severally liable

for, and is obligated to pay the Fund, the remaining amount of Rose's withdrawal liability, to wit, $130,431.02, together with interest accrued thereon through June 1, 2020 in the amount of $44,998.70, or a total of $175,429.72.

44.  Pursuant to Sections 502(g)(2), 515 and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2), 1145 and 1451(b), Red is also liable to the Fund for interest which continues to accrue from June 1, 2020 through the date of payment on the delinquent liability, liquidated damages, the costs of collection and attorneys' fees.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants, awarding the Fund:

(a)  unpaid withdrawal liability in the amount of $130,431.20, as provided by ERISA Sections 502(g)(2)(A), 515 and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2)(A), 1145 and 1451(b);

(b)  interest accrued on the unpaid withdrawal liability as of June 1, 2020 in the amount of $44,998.70 and as shall continue to accrue from that date through the date payment is made, as provided in the Trust Agreement and by ERISA Sections 502(g)(2)(B), 29 U.S.C.§ 1132(g)(2)(B), 515 and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2)(B), 1145 and 1451(b), in an amount determined in accordance with the Trust Agreement;

(c)  liquidated damages, as provided in the Trust Agreement and by ERISA Sections 502(g)(2)(C), 515 and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2)(C), 1145 and 1451(b) in an amount determined in accordance with the Trust Agreement;

(d) reasonable attorneys' fees and the costs of this action, as provided by ERISA Section 502(g)(2)(D), 515 and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2)(D), 1145 and 1451(b); and

(e) such other and further relief as the Court deems appropriate.

Dated: New York, New York
June 4, 2020

CARY KANE LLP

/s/
By: Owen M. Rumelt
*Attorneys for Plaintiffs*
1350 Broadway, Suite 2220
New York, New York  10018
(212) 868-6300